UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| STEVEN D. GARRISON,<br><br>                      Plaintiff,<br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social Security Administration<br><br>                      Defendant. | Case No. 10-CV-793-JCC-BAT<br><br>**REPORT AND RECOMMENDATION** |

Steven D. Garrison seeks judicial review of the denial of his application for Social Security Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) by the Commissioner of the Social Security Administration. Dkt. 5. Mr. Garrison contends the ALJ erred by (1) incorrectly assessing the medical evidence; (2) improperly assessing the lay witness evidence; and (3) improperly assessing Mr. Garrison's functional limitations and thereby presenting the vocational expert improper hypothetical questions. Dkt. 15. For the reasons below, the Court recommends the Commissioner's decision be **REVERSED** and **REMANDED** for further administrative proceedings.

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Garrison is currently 57 years, old has a high school education and four or more years of

REPORT AND RECOMMENDATION- 1

college education, and has past work experience as a grocery store manager.[1]  On May 2, 2006, he applied for DIB and SSI, alleging disability as of January 1, 2003.  Tr. 121.  His application was denied initially and on reconsideration.  After a hearing conducted on December 8, 2008, the ALJ issued a decision on March 2, 2009 finding Mr. Garrison not disabled.  Tr. 9.  The Appeals Council denied Mr. Garrison's request for review, making the ALJ's decision the final decision of the commissioner.  Tr. 1.

## THE ALJ'S DECISION

Applying the five-step sequential evaluation process for determining whether a claimant is disabled,[2] the ALJ found at step one that Mr. Garrison had not engaged in substantial gainful activity since the alleged onset date.  Tr. 14.

At step two, the ALJ found Garrison had the following severe impairments: cognitive deficits and bipolar disorder.  *Id*.

At step three, the ALJ found Garrison's impairments did not meet or equal the requirements of a listed impairment.[3]  Tr. 16.

Before proceeding to step four, the ALJ found Garrison had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but the claimant is limited to simple repetitive tasks and superficial interaction with coworkers and the public.  Further, the claimant's interaction with supervisors and coworkers is limited to accepting instructions/deadlines.  Tr. 17.

At step four, the ALJ found Garrison could not perform his past work.  Tr. 24.

And at step five, the ALJ found, considering Garrison's age, education, work experience,

---

[1] *See* Tr. 24, 117, 145, 256.
[2] 20 C.F.R. §§.1520, 416.920.
[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION- 2

and RFC, there are jobs that exist in significant numbers in the national economy that he can perform and that Garrison was thus not under disability from January 1, 2003, through the date of the decision. *Id*.

## STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). The ALJ determines credibility and resolves conflicts and ambiguities in the evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## DISCUSSION

A.  ASSESSMENT OF THE MEDICAL EVIDENCE

Mr. Garrison argues the ALJ erred in discounting the opinions of his longtime treating physicians Richard M. Furlong, M.D., and Daniel A. Sherman, M.D., and instead giving significant weight to the opinions of examining doctors Shoshanna Press, M.D. and Beverly J. Norfleet, Psy.D. As discussed below, the Court agrees.

***Richard Furlong, M.D.***

Treating doctors' opinions should be given more weight than the opinions of doctors who do not treat a claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995). Where the treating doctor's opinion is not contradicted by another doctor it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830.

REPORT AND RECOMMENDATION- 3

Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id*. (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors' opinions, are correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir.1988).

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected. *See Orn*, 495 F.3d at 631-32.  Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id*. at 632.

Here, the ALJ's three reasons to reject Dr. Furlong's opinions are inadequate.  The ALJ rejected Dr. Furlong's opinions finding a lack of objective medical evidence or examination.  Tr. 23-24.  The record does not support this finding.

There is no dispute Mr. Garrison suffered strokes or Transient Ischemic Attacks (TIA).  Tr. 15.  Dr. Furlong's opinions that these attacks severely affect Mr. Garrison is consistent with Dr. Sherman, a treating psychiatrist, who opined Mr. Garrison suffered from significant cognitive and social limitations, impaired memory and concentration, and social functioning deficits due to strokes.  Tr. 404-08; Tr. 589-96.  The opinions are also consistent with Dr. Mashburn who opined Mr. Garrison demonstrated significant difficulties in cognitive functioning.  Tr. 463.

The ALJ placed significant weight on the opinions of examining Doctors, Shoshana Press,

REPORT AND RECOMMENDATION- 4

M.D. and Beverly Norfleet, Psy.D.  The ALJ placed weight on parts or Dr. Press's opinions and disregarded other parts.  The ALJ indicated Dr. Press found Mr. Garrison could interact with others, perform simple repetitive tasks, and that his bipolar disorder was stable.  Tr. 22.  But the ALJ disregarded Dr. Press's overall conclusion that Mr. Mr. Garrison did poorly on memory and concentration tests, that she had serious doubts Mr. Garrison could work in a normal work environment, and that it was "possible" he could perform simple repetitive jobs with a supervisor that was aware of his deficits.  Tr. 353.  As a whole, Dr. Press's opinions are consistent with the opinions of Dr. Furlong and Dr. Sherman.

Additionally the ALJ's finding no objective testing supports Dr. Furlong's opinions is incorrect.  Dr. David Fordyce performed neuropsychological testing on Mr. Garrison.  While these results were difficult to interpret, Dr. Fordyce opined Mr. Garrison had multi-factorial cognitive impairments, and that the strokes Mr. Garrison suffered may have affected higher cortical skills and upper extremity functions.  Tr. 428.

Second, the ALJ rejected Dr. Furlong's opinions finding them vague and lacking "function by function" specificity required by the regulations.  Tr. 23-24.  The ALJ must develop the record to resolve ambiguity.  An ALJ's duty to do so is triggered when there is ambiguous evidence or when the record is inadequate to allow proper evaluation of the evidence.  *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  The ALJ's duty to develop the record in this case is highlighted by Dr. Beverly Norfleet's report, which the ALJ gave significant weight.  Dr. Norfleet recommended additional neuropsychological testing and a DVR evaluation "should a neuropsychological exam reveal significant cognitive impairment."  Tr. 363.

It was also error to reject the doctor's opinion because it lacked a "function-by-function"

REPORT AND RECOMMENDATION- 5

assessment. It is the ALJ, not a doctor, who is required in assessing a claimant's RFC to identify the claimant's limitations on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945. Only after that may the ALJ express a claimant's RFC in terms of the exertional levels of work. *See* SSR 96-8p (July 2, 1996).

And third, the ALJ rejected Dr. Furlong's opinions on the grounds they were beyond his expertise. Tr. 23-24. The lack of specialization is not a reason to reject a treating doctor's opinion. A treating physician's opinion may not be discredited on the ground that he is not a board-certified psychiatrist. *See Lester v. Chater*, 81 F.3d at 833.

### *Daniel Sherman, M.D.*

Dr. Sherman opined Mr. Garrison had significant cognitive and social limitations, impaired memory and concentration, and social functioning deficits. Tr. 404-08; Tr. 589-96. The ALJ rejected Dr. Sherman's opinions finding the doctor did not provide objective medical evidence. Tr. 23. There is no doubt Mr. Garrison is mentally ill, has been hospitalized for this illness, and has been affected by the strokes he suffered. Dr. Sherman indicated in his evaluation forms, his opinions were based on clinical interviews and treatment over ten years. Tr. 404, 589, 593. The Court finds this is a sufficient basis for the opinions the doctor reached.

The ALJ also rejected Dr. Sherman's opinions as inconsistent with the record. This conclusion is based on picking only certain parts of the record. For example, the ALJ noted Dr. Press's opined Mr. Garrison was capable of simple repetitive tasks. Tr. 23. Dr. Press, however, did not unequivocally state Mr. Garrison was capable of such tasks. Rather, she stated it was "possible," not likely, that Mr. Garrison could perform simple repetitive tasks. Tr. 353. Her opinion that Mr. Garrison is quite impaired is made clear by her statement: "I do have serious doubts as to whether the claimant would be able to perform in a regular work environment due to

REPORT AND RECOMMENDATION- 6

cognitive difficulties." Tr. 353.

Similarly, the ALJ indicated examining doctor Beverly Norfleet, Psy.D. found Mr. Garrison was just mildly affected by TIAs; that Mr. Garrison's daily living activities were inconsistent with testing results; that Mr. Garrison had average reasoning capacity; and only had mild memory problems. Tr. 22. But, the ALJ disregarded Dr. Norfleet's other findings that Mr. Garrison scored in the Borderline to Extremely Low range on 5 of 8 indexes (Tr. 362), and that he had possible difficulties with immediate memory.

Moreover, the ALJ disregarded Dr. Norfleet's opinion that further neuropsychological testing was needed to assess Mr. Garrison's level of cognitive impairment and that he should also obtain a DVR assessment if testing showed "significant cognitive" impairment. Tr. 353. The Court cannot pick and choose only portions of the record. The Court must "consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.,* 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir. 1989)). Given, Dr. Norfleet's concerns that additional testing should be performed, because Mr. Garrison's impairments might be significant, the ALJ erred in rejecting Dr. Sherman's opinions.

And finally, the ALJ rejected Dr. Sherman's opinions as inconsistent with the ALJ's assessment of Mr. Garrison's RFC. The ALJ's functional assessment is not medical evidence of record. Accordingly, the Court concludes the ALJ's residual functional assessment, is not, itself, a specific and legitimate reason to reject Dr. Sherman's opinion.

B.  *LAY WITNESS EVIDENCE*

Mr. Garrison argues the ALJ erred in evaluating the lay witness evidence. Dkt. 15 at 17-19. Lay testimony as to a claimant's symptoms is competent evidence that the ALJ must take into

REPORT AND RECOMMENDATION- 7

account, unless the ALJ expressly determines to disregard such testimony and gives reasons germane to each witness for doing do.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for disregarding lay witness testimony must be specific.  *See Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

### *Bobbi Oxford, Mental Health Clinician*

Ms. Oxford has been Mr. Garrison's mental health clinician since 2006 and sees him every week.  Tr. 50-51.  She is not a doctor but her opinions are evaluated using the same factors applied to evaluate medical opinions of acceptable medical sources such as: the length and frequency of the treating relationship, the opinion's consistency with other evidence, how well the opinion is supported and explained, and whether the source has a specialty or area of expertise related to the impairment.  *See* SSR 06-03p and 20 C.F.R. § 404.1527(d).

Ms. Oxford, testified Mr. Garrison sometimes cannot remember their conversations or her name after a medical visit, that he suffers from fatigue, and that he would have difficulty with simple repetitive tasks due to lack of endurance and memory problems.  Tr. 53.  The ALJ rejected Ms. Oxford's testimony "as inconsistent with the record." Tr. 20-1.  However, as discussed above, the record does not support the ALJ's determination.

The ALJ also rejected Oxford's testimony that Mr. Garrison functions at a low level as inconsistent with Mr. Garrison's daily activities.  The record indicates Mr. Garrison drives himself to his doctors, buys groceries, attends therapy sessions, and gardens but that he does not perform these activities in a normal way.  For example, Mr. Garrison arrived for his appointment with Dr. Press's 30 minutes early, but spent three hours to find the office during the weekend before the appointment.  Tr. 349.  He has difficulty shopping and has to call his family, while shopping, for assistance.  Tr. 19.  Mr. Garrison apparently resumed gardening, but there is

REPORT AND RECOMMENDATION- 8

nothing showing what this involves. All we know is gardening is still a struggle for Mr. Garrison. As he stated, it used to take one day to trim ivy. Now he can get two-thirds done over the span of the summer months. Tr. 349.

Given Ms. Oxford's area of expertise, lengthy treatment history with Mr. Garrison, and the reasons discussed above, the ALJ erred in assessing Ms. Oxford's testimony.

*Karla Watson, Sister*

The ALJ rejected Ms. Watson's statement that Mr. Garrison's cognition and memory was worse after he suffered his TIA's and that he had difficulty with problem solving, reading, and completing sentences. As grounds, the ALJ found these statements were medical opinions that Ms. Watson was not qualified to make. Tr. 21. A lay witness may not provide a medical diagnosis. 20 CFR 404.1513(a). However, lay witnesses may testify about a claimant's symptoms, and how impairments affect the claimant's ability to work. Such evidence is competent and cannot be disregarded without comment. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *see* 20 CFR 404.1513(e).

The Court finds Ms. Watson, a critical care nurse, was not making a medical diagnosis in describing her observations of Mr. Garrison. Her statements were in response to questions posed in a standard Department of Disability Determination Service form entitled "Daily Activities Questionnaire - Other Person," which lay persons routinely complete. Her statements were descriptions or examples of her observations of Mr. Garrison's symptoms and his behavior based on her personal observations. Accordingly, the ALJ erred in rejecting Ms. Watson's statements.

*Vicki Allison, Sister*

In 2003, Ms. Allison completed a third party function report form. Tr. 169-73. The ALJ rejected Ms. Allison's statements about Garrison's manic episodes and difficulty with sentences

REPORT AND RECOMMENDATION- 9

and words finding them inconsistent with the record.  The ALJ found Mr. Garrison gave Dr. Mashburn "overly detailed" answers to questions.  Tr. 21.  But, Ms. Allison's and Dr. Mashburn's findings are not inconsistent.  Dr. Mashburn found Mr. Garrison "does demonstrate significant difficulties in cognitive functioning even as he converses, becoming overly detailed and excessive in his details in his answers, somewhat off the point and not goal directed."  Tr. 463.  Dr. Mashburn concluded "It is very likely he would show significant difficulty with fellow employees and employers at this time due primarily to the combination of depression and cognitive difficulties."  Tr. 464.  It was error to reject Ms. Allison's statements as inconsistent with Dr. Mashburn's assessment of Mr. Garrison.

Ms. Allison's statement that Mr. Garrison has had "extremely manic episodes" is also consistent with the medical record.  In making that statement, Ms. Allison also stated Mr. Garrison's mental health problems began in 1993, worsened in 2000 and that Mr. Garrison had to be hospitalized.  Given this, it is unlikely Ms. Allison meant to say Mr. Garrison still had "extremely manic episodes."  It is unlikely she meant this since there is no mention in the remainder of her report about observing extremely manic episodes.

There is no dispute Mr. Garrison suffers from bi-polar disorder that was so severe in the past that he was twice hospitalized.  Hence, the Court concludes Ms. Allison's comment about manic episodes, is not inconsistent with Dr. Press's evaluation Mr. Garrison's bi-polar disorder was stable in 2003.  The ALJ thus erred in ejecting Ms. Allison's testimony.

*Evelyn Garrison, Mother*

Ms. Garrison completed a third party function report form in May 2006.  The ALJ gave little weight to her statement that Mr. Garrison had low energy "because Ms. Garrison failed to illustrate the extent of the effect of Garrison's low energy on his functioning."  Tr. 22.  Ms.

REPORT AND RECOMMENDATION- 10

Garrison stated Mr. Garrison has "low energy. Tries to help but does not complete tasks." That he "would cook complete meals before the illness [but] now has very low energy." That he makes "sandwiches or warm soup but that most of the cooking is done by his mother," and that he "used to enjoy gardening and hiking." Tr 247. Ms. Garrison's descriptions of the effects of Mr. Garrison's low energy are spare but merited consideration and should not have been disregarded. The ALJ also discounted Ms. Garrison's opinion regarding Mr. Garrison's limitations as inconsistent with the medical evidence. As discussed above, there is evidence that Mr. Garrison suffers from severe limitations. Tr. 534.

### *Mr. Garrison's Credibility*

The ALJ did not find Mr. Garrison was malingering. The ALJ may thus reject his testimony about the severity of the symptoms only by making specific findings stating clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996). The ALJ may consider "ordinary techniques of credibility evaluation" including the claimant's reputation for truthfulness, inconsistencies in her testimony or between her testimony and conduct, her daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effects of the symptoms of which claimant complaints. *Id*. at 1284.

The ALJ discounted Mr. Garrison's credibility finding Mr. Garrison exaggerated his symptoms. In support, the ALJ pointed to Dr. Mashburn's and Dr. Fordyce's reports. Tr. 20. According to the ALJ, Dr. Mashburn found Mr. Garrison's behavior was inconsistent with a person experiencing memory problems, and that Mr. Garrison's test results indicated Mr. Garrison was trying to make a point in demonstrating his difficulties. *Id*; Tr. 462-463. But, in connection with these concerns, Dr. Mashburn also stated "This does not mean he does not demonstrate significant difficulties with memory; I am sure he does." Tr. 463.

REPORT AND RECOMMENDATION- 11

The ALJ also indicated Dr. Fordyce suggested Mr. Garrison was over reporting his symptoms "to indicate significant impairment." Tr. 20; Tr. 428.  But Dr. Fordyce did not opine that Mr. Garrison's impairments were not significant.  Rather, he stated:

> I suspect Mr. Garrison's impairments in function, including cognitive, are multi-factorial in nature.  There may well be some mild ischemic changes which have effectuated certain aspects of higher cortical skill and perhaps right upper extremity function in a mild fashion.  In addition, there are psychological forces operating with components of depression and anxiety which are likely further compromising his ability to function and are compromising his self appraisal if his ability to function.

Tr. 428.

The ALJ also discounted Mr. Garrison's testimony because Mr. Garrison was not pursuing employment in an effort to avoid jeopardizing his disability status.  Tr. 20.  Mr. Garrison apparently made such a statement to Dr. Furlong.  Tr. 552.  Evidence of a claimant's self limitation is an appropriate factor in assessing a claimant's symptom testimony.  *Osenbrock v. Apfel*, 240 F.3d 1157, 1165-66 (9th Cir. 2001).  But the Court finds it error to disregard Mr. Garrison' testimony based on a single statement contained in the records of a doctor who has treated him for ten years, especially since there is no evidence of malingering.

Third, the ALJ found Mr. Garrison's daily activities were inconsistent with his alleged symptoms.  Tr. 20.  An ALJ may consider a claimant's daily activities in assessing credibility. 20 C.F.R. § 404.1529(c)(3)(i).

The record shows Mr. Garrison's daily activities and social interaction are not normal.  Mr. Garrison can drive himself.  However, Dr. Press noted Mr. Garrison practiced driving to her office on the weekend before the appointment and it took him three hours to find the office on a map though he has lived in the areas since 1969.  Tr. 349.  The ALJ concluded the ability to drives show the ability to multitask.  Tr. 20.  If Mr. Garrison drove like a normal person this

REPORT AND RECOMMENDATION- 12

1  conclusion would make sense.  But Mr. Garrison testified that when he drives, he needs to pull

2  over to look for landmarks, does not drive when there is busy traffic, and that he has difficulty

3  driving to his weekly therapy with Ms. Oxford.  Tr. 47.

4  Mr. Garrison attends art therapy and depression support group sessions, but the record does

5  not indicate the level of social interactions.  Tr. 637.  The ALJ found Mr. Garrison was training

6  his mother's dog[4] and was gardening,[5] but there the record does not show Mr. Garrison actually

7  did these activities.

8  Lastly, the ALJ found there were periods when Mr. Garrison did not pursue treatment.

9  However, an ALJ cannot count failure to pursue treatment against a claimant if the claimant

10 cannot afford such treatment.  *Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006);

11 *see also* Social Security Ruling 82-59.  The ALJ found a three year gap in treatment with Dr.

12 Furlong, and that Mr. Garrison did not begin treatment with Ms. Oxford until 2006, three years

13 after the alleged onset of disability.  Tr. 20.  But, Mr. Garrison did not seek treatment with Dr.

14 Furlong from June 2003 until May 2005 because he couldn't afford it.  Tr. 549, 551.  And he did

15 obtain private psychiatric care with Dr. Sherman in the three-year period the ALJ focuses on.  Tr.

16 403-55.  There is also no indication in the record that he was asked to begin treatment with Ms.

17 Oxford before 2006 but refused to do so.  Based on the present record, the Court cannot conclude

18 Mr. Garrison inexcusably failed to pursue treatment.

19 *C.   Step-Five Assessment*

20 The ALJ found Mr. Garrison is unable to perform any past relevant work and thus

21 proceeded to step-five.  Tr. 24.  At step-five, the Commissioner has the burden to show Mr.

---

[4] The Court reviewed the entirety of Exhibit 36F and did not finding anything about training his mother's dog as the ALJ indicated on Ex. 36F, pg. 18.

[5] The page cited by the ALJ, Tr. 640, states Garrison "has begun to reconnect with his garden." There is no indication of any level of activity or what this exactly means.

REPORT AND RECOMMENDATION- 13

1  Garrison can do any other work considering his RFC.  An RFC that fails to take into account a
2  claimant's limitations is erroneous.  *Valentine v. Comm'r. of Soc. Sec. Admin.,* 574 F.3d 685, 690
3  (9th Cir. 2009).  Here, the ALJ's assessment of Mr. Garrison's RFC failed to account for all of
4  his limitations.  The ALJ's RFC assessment was based on the erroneous rejection of the opinions
5  of Dr. Furlong, Dr. Sherman, and portions of the opinions of Dr. Press, Dr. Norfleet, Dr. Fordyce
6  and Dr. Mashburn.  Further, the ALJ's RFC assessment was also based on the rejections of large
7  portions of the evidence presented by lay witnesses and Mr. Garrision.

8  Accordingly, the Court finds the ALJ's assessment of Mr. Garrison's RFC failed to capture
9  restrictions related to his cognition and memory identified in the medical and lay testimony.

10  Because Mr. Garrison has non-exertional limitations, the ALJ properly called for testimony
11  from a vocational expert.  But because the ALJ's hypothetical questions to the vocational expert
12  were based on an RFC that failed to reflects all of Mr. Garrison's limitations, the opinion of the
13  vocation expert cannot be given any weight.  *See Bray v. Comm'r. of Soc. Sec. Admin.*, 554 F.3d
14  1219, 1228 (9th Cir. 2009) (citing *Russell v. Sullivan*, 930 F.2d 1443, 1445 (9th Cir. 1991))
15  (emphasis in original) ("Hypothetical questions posed to a VE must 'set out *all* the limitations
16  and restrictions of the particular claimant.'").

## CONCLUSION

18  For the foregoing reasons, the Court recommends this case be **REVERSED** and
19  **REMANDED** for further administrative proceedings.  The Court recommends on remand, the
20  ALJ (1) reevaluate and further develop, as necessary, the medical evidence in the record; (2)
21  reevaluate the medical opinions of Shoshanna Press, M.D., Beverly J. Norfleet, Psy.D., David
22  Mashburn, Ph.D., Daniel A. Sherman, M.D., and Richard M. Furlong, M.D.; (3) reevaluate lay
23  witness evidence of Bobbie Oxford, M.A., M.H.P., Ms. Watson, Ms. Allison, and Ms. Garrison;

REPORT AND RECOMMENDATION- 14

1  (4) reevaluate plaintiff's RFC; and (6) reassess steps four and five of the sequential evaluation

2  process with the assistance of a vocational expert if deemed appropriate.

3      A proposed order accompanies this Report and Recommendation.

4      DATED this 25th day of January, 2011.

5

6

7                                   BRIAN A. TSUCHIDA
                                 United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION- 15